UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Elija Y.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Frank Bisignano[2], <br> *Commissioner of Social Security*, <br><br> Defendant. | Case No. 24-cv-3788 (NEB/DJF) <br><br> **REPORT AND RECOMMENDATION** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Elija W. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Decision").[3] This matter is before the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Because substantial evidence supports the Decision, the Court recommends Plaintiff's request for relief (ECF No. 9) be denied, Defendant's request for relief (ECF No. 11) be granted, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the Court substitutes Frank Bisignano as the Defendant.

[3] Plaintiff's brief references Disability Insurance Benefits and seeks review under Title II of the Social Security Act (ECF No. 9 at 1), but the cited Decision denied Plaintiff's request for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (*See, e.g.*, R. 5, 17, 78; *see also* ECF No. 9 at 2, referencing SSI.)

# BACKGROUND

## I. Plaintiff's Claim

Plaintiff applied for SSI on January 6, 2022. (Soc. Sec. Admin. R. (hereinafter "R.") 78.)[4] At that time he was 19 years old, with a high school education and prior work experience in the produce department at a retail store. (R. 78, 224-225.) Plaintiff alleged he became disabled on March 15, 2020 (R. 17, 78), resulting from autism, attention-deficit/hyperactivity disorder, obsessive-compulsive disorder, eating disorder, depression, insomnia, and problems with both feet and hands (R. 223).

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine

---

[4] For clarity, convenience, and ease of use, the Court cites to the Administrative Record's pagination rather than the Court's ECF and page numbers when citing to the Administrative Record. All other citations refer to ECF docket and page numbers.

whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[5]

If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving he cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III. Procedural History

The Commissioner denied Plaintiff's application for SSI initially (R. 106) and on reconsideration (R. 113-115). On January 19, 2024 at Plaintiff's request (R. 116), an

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 33-63). Plaintiff was represented by an attorney (R. 33), and Plaintiff and a vocational expert each testified during the hearing (R. 34.)

During his hearing, Plaintiff testified that he had difficulty maintaining employment because he could not reconcile his employers' rules and safety policies with their productivity expectations (R. 42-44). He testified that he struggled to follow instructions and needed to have them repeated "many, many times." (R. 48.) Plaintiff also testified that he no longer takes medication to treat his mental impairments because he does not believe it is effective, he enjoys making pottery, and he traveled to Singapore for a three-month vacation but spent a lot of time hiding in his room. (R. 45-49, 52-53.)

After the hearing, the ALJ evaluated Plaintiff's work history during the relevant period. (R. 19.) Noting that Plaintiff's income during that period was minimal, the ALJ found Plaintiff had not engaged in substantially gainful work activity since his alleged onset disability date. (*Id*.)

The ALJ next evaluated Plaintiff's impairments. The ALJ considered Plaintiff's claim that he suffered from wrist pain and determined that Plaintiff does not suffer from a medically determinable wrist impairment. (R. 19-20.) The ALJ further found Plaintiff suffers from cannabis and alcohol use disorder but determined that it was non-severe. The ALJ nevertheless found Plaintiff suffers from multiple physical and mental impairments, which, at least in combination, are severe: autism spectrum disorder, depression, anxiety, bipolar disorder, panic disorder, obsessive compulsive disorder, attention deficit hyperactivity disorder, osteoarthritis, and pronation deformity of both feet. (R. 19-20.)

In assessing the impact of these limitations on Plaintiff's mental functioning, the ALJ found Plaintiff has moderate limitations in: (1.) understanding, remembering, or applying information;

4

(2.) interacting with others; (3.) concentrating, persisting, or maintaining pace; and (4.) and adapting or managing oneself. (R. 20-21.) But the ALJ found Plaintiff's mental impairments do not severely limit any broad area of functioning. (R. 20-22.) Because the ALJ did not find any mental impairment resulted in an extreme limitation or two marked limitations in any broad area of functioning, the ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing. (R. 20-22.)

At step four of the sequential analysis, the ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 22-26) and determined that Plaintiff has:

> the [RFC] to perform medium work as defined in 20 CFR 416.967(c) except the claimant has to avoid unprotected heights and moving mechanical parts. He can operate foot controls frequently with bilateral lower extremities. The claimant can frequently push and/or pull with bilateral lower extremities. He can understand, remember, and carry out simple instructions. The claimant can occasionally interact with supervisors and coworkers. He can never interact with the public. The claimant cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. He can occasionally deal with changes in a routine work setting.

(R. 22.)

Next, the ALJ found Plaintiff has past relevant work experience as a "stock clerk" (DOT[6] #299.367-014, generally heavy, semi-skilled work with a specific vocational preparation ("SVP") level 4), which Plaintiff performed at the medium exertional level. (R. 26-27.) The ALJ concluded that Plaintiff is unable to perform this past relevant work because it exceeds his RFC. (R. 27.)

The ALJ then proceeded to step five of the sequential analysis and evaluated whether Plaintiff can perform any other jobs that exist in significant numbers in the national economy. (R. 27-28.) Based the vocational expert's testimony, and considering Plaintiff's age, education, work

---

[6] "DOT" refers to the Dictionary of Occupational Titles.

5

experience, and RFC, the ALJ determined that Plaintiff is able to perform certain medium unskilled jobs such as: "cleaner II" (DOT #919.687-014, at SVP level 1, with approximately 53,010 jobs in the national economy); "kitchen helper" (DOT #318.687-010, at SVP 2, with approximately 120,293 jobs in the national economy); and "hand packager" (DOT #920.587-018, at SVP 2, with approximately 70,335 jobs in the national economy). (R. 28; *see also* R. 56, vocational expert's hearing testimony.) The ALJ noted that the Dictionary of Occupational Titles does not address certain of Plaintiff's RFC limitations, including his limited ability to operate foot controls only "frequently". (R. 28.) The ALJ found to the extent that the Dictionary of Occupational Titles does not address a limitation, the vocational expert reasonably relied on her professional experience, knowledge, and education to identify the jobs Plaintiff is able to perform. (*Id.*)

Based on the foregoing findings at each step of the sequential analysis, the ALJ concluded that Plaintiff is not disabled. (R. 28.) The Appeals Council denied Plaintiff's request for review of the ALJ's Decision (R. 1-6), and this lawsuit followed.

## DISCUSSION

### I. Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and

one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The ALJ's decision "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.*

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At a minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.    Analysis

Plaintiff asks the Court to reverse the ALJ's Decision or remand this matter for further proceedings before the Commissioner on the grounds that: (1.) the ALJ's RFC determination does not adequately take into account Plaintiff's inability to function independently; and (2.) substantial

7

evidence does not support it. (ECF No. 9 at 11-15.) Defendant contends the ALJ applied the correct legal standard and points to evidence in the record supporting the ALJ's Decision. (ECF No. 11 at 21.)

Plaintiff's challenge to the ALJ's RFC determination is the crux of his complaint. RFC is defined as the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a). It is the claimant's burden to prove his functional limitations related to his RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of his limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000).

As part of an RFC determination, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, [and] (2) whether they are consistent with other medical sources …." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). But "[n]o talismanic language is required for the ALJ to meet the requirements of [section] 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion." *Mario O. v. Kijakazi*, No. 21 CV 2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023). Under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources. 20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th at 875 (citing 20 C.F.R.

§ 404.1520c(a), stating that "treating physicians are [no longer] entitled to special deference").

Plaintiff challenges the ALJ's assessment of his mental impairments, in particular. (*See generally*, ECF No. 9.) The ALJ determined that Plaintiff has the mental RFC to "understand, remember, and carry out simple instructions." The ALJ further found Plaintiff can "occasionally interact with supervisors and coworkers" but "never interact with the public." The ALJ acknowledged Plaintiff could not work under pressure in a job that requires "a specific production rate such as assembly line work or work that requires hourly quotas." He also found Plaintiff can only "occasionally deal with changes in a routine work setting." (R. 22.) In assessing these limitations, the ALJ explained:

> As to the claimant's symptoms stemming from his mental impairments, the record as a whole fails to support greater limitations than those assessed herein. The undersigned finds the claimant's modalities of treatment and objective findings to be unsupportive of greater limitations than those assessed herein. The medical records are void of mental health treatment, both therapeutic and medication management during the period at issue. While the claimant reported some difficulty concentrating, becoming easily overwhelmed, and some isolative behaviors, he was capable of traveling to Singapore alone and is capable of managing his activities of daily living. For these reasons, the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(R. 24-25.) The ALJ recognized that Plaintiff's medical and academic records showed a history of autism spectrum disorder, anxiety, depression and attention-deficit/hyperactivity disorder. (R. 23, citing R. 320, 352-358, 359-391.) But he also noted that Plaintiff reported he was not interested in therapy or medication. (R. 23, citing R. 320.) He observed that Plaintiff's medical records were devoid of any mental health treatment or medication management during the period at issue, and pointed to Plaintiff's own testimony that Plaintiff no longer takes medication because he did not find it effective. (R. 23, 25, citing R. 47.)

In reaching his RFC determination, the ALJ acknowledged Plaintiff's academic records

from 2020 suggesting Plaintiff's autism may impede his ability to work with others and meet workplace expectations (R. 23, citing R. 380), but noted that Plaintiff's cognitive abilities were average and he could maintain a friendship (R. 23, citing R. 365, 370, noting Plaintiff's full-scale IQ of 104 on Wechsler Abbreviated Scale of Intelligence).  The ALJ added that, despite Plaintiff's report that he requires assistance to manage his personal care and finances (R. 21, citing R. 232-234), Plaintiff could provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment, respond to questions from medical providers, and demonstrate intact memory, thoughts, and cognition (R. 21, citing 418-422; *c.f.* R. 380, stating that Plaintiff "has a bank account and knows how to independently withdraw and deposit money").

The ALJ further observed that while Plaintiff alleged difficulty getting along with others and that he does not shop in public forums (R. 21, citing R. 234), Plaintiff could go out alone and regularly interact with others via telephone and video chat, and he had never been laid off from a job because of problems getting along with others  (R. 21, citing R. 234-235).  The ALJ similarly acknowledged Plaintiff's alleged difficulty following written instructions and required spoken reminders (R. 21, citing R. 236), but noted that other evidence in the record showed Plaintiff could maintain appropriate alertness, attention, and concentration during testing, relate during examinations, recall information, and complete simple tasks (R. 21, citing 418-422).  The ALJ also cited evidence that Plaintiff exhibited appropriate grooming and hygiene, no problem getting along well with medical providers and staff, normal mood and affect at medical appointments, intact judgment and insight, and no problems with temper control.  (R. 21, citing 418-422, 472.)

The ALJ additionally relied on the prior administrative medical findings of State agency psychological consultants Demetri Dress, Psy.D., and Ray Conroe, Ph.D., L.P. (R. 25, citing 70-

10

71, 74-76, 86-87, 90-91). Both Drs. Dress and Conroe found that though Plaintiff has severe mental impairments, he has no more than moderate functional limitations in any domain (R. 70-71, 74-76). The ALJ found these opinions persuasive and included limitations in Plaintiff's RFC that were consistent with these findings. (R. 22, 25.)

The ALJ similarly relied on Dr. Alford Karayusuf's September 2022 medical opinion. (R. 25-26, citing R. 418-422.) Dr. Karayusuf concluded that Plaintiff could:

> understand, retain and follow simple instructions. He is restricted to very brief, superficial, infrequent interactions with fellow workers, supervisors and the public. He would do best working alone as much of the time as possible. Within these restricted parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, he is able to maintain pace and persistence. He is able to manage benefits.

(R. 21). The ALJ found Dr. Karayusuf's opinion persuasive but declined to adopt it in its entirety. (R. 25-26.) Rather, the ALJ imposed greater restrictions, barring Plaintiff from *all* public contact, but found the record supportive of "occasional interaction with co-workers and supervisors, similar to the claimant's past jobs and interaction with others while in school." (R. 25.) The ALJ cited Plaintiff's ability to travel to Singapore by himself, and his ability to attend medical appointments and interact with staff. (R. 25, *see also* R. 21, citing R. 418-21, 472, medical notes describing Plaintiff's positive interactions with medical staff and intact mood and affect.)

Plaintiff claims the ALJ's RFC assessment is flawed because the ALJ failed to consider "how an individual who relied upon professional support just two years prior to complete special-education coursework in high school should be expected to function without his ruminating fears and rigid-based thinking causing substantial off-task time during a work day." (ECF No. 9 at 13.) Plaintiff cites school records showing: (1.) concern over his school attendance and tendency to leave school early; (2) an individualized education plan permitting additional time to complete class assignments and tests because of classroom distractions; and (3.) daily support from

11

professionals to help him manage a schedule and use time appropriately. (*Id.* at 12, citing R. 365, 366, 374.) Plaintiff claims the ALJ's RFC determination did not account for these "off-task" behaviors. (*Id.* at 9.) Plaintiff further contends the ALJ's RFC determination is "based on incorrect assumptions." (*Id.* at 9.) Plaintiff claims the ALJ wrongly presumed that "because [Plaintiff] can graduate high school, perform basic daily chores, and travel internationally, he should somehow be able to manage stressors independently within a workplace environment." (*Id.* at 13.) Plaintiff argues the ALJ failed to consider that much of his "functioning" resulted from supportive environments and that the ALJ's RFC determination does not reflect his true abilities. (*Id.* at 14.)

The Court finds the ALJ's RFC determination is well-supported. The ALJ appropriately relied on prior administrative findings and Dr. Karayusuf's medical opinion that Plaintiff's mental impairments were not disabling (R. 22, 25-26, citing 70-71, 74-76, 418-422). 20 C.F.R. §§ 416.913(b)(1)(2), permitting an ALJ to rely on prior administrative medical findings and other expert medical sources. The ALJ also noted that Plaintiff's medical records did not include mental health treatment or medication management during the period at issue and that Plaintiff no longer took medication because he did not find it helpful. (R. 23, 25, citing R. 45-49). An ALJ may properly discount a claimant's alleged intensity and persistence of an impairment if he does not follow a prescribed treatment. 20 C.F.R. § 416.930(b).

The ALJ also acknowledged Plaintiff's various self-reports regarding the severity of his mental impairments but cited substantial evidence that is inconsistent with Plaintiff's subjective reporting. (R. 21, 24-25, citing, *.e.g.*, R. 365, 370, 380, 418-422, 472.) While Plaintiff would have had the ALJ give greater weight to his own subjective reports, Congress expressly prohibits granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. §

423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability.")

Moreover, contrary to Plaintiff's suggestion (*see* ECF No. 9 at 12-13), the ALJ did take Plaintiff's academic records into account. (*See* R. 23; citing R. 380; *c.f.,* R. 380, stating that Plaintiff's strengths include his "independence" and noting that Plaintiff indicated the special education services he received in school "may not be necessary".) Plaintiff wants the Court to find he is incapable of functioning with sufficient independence to perform a job, but he offers no professional medical evaluation or assessment to support that contention. The Court thus concludes that the ALJ appropriately considered the record as a whole and properly reconciled conflicting evidence. 20 C.F.R. § 404.1545(a)(3). And as discussed above, substantial evidence supports his findings.

Plaintiff's arguments center largely on how the ALJ allegedly overlooked some of the evidence and failed to properly evaluate other evidence. (ECF No. 9 at 11-14.) But it is not the Court's job to reweigh the evidence. *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). Moreover, the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).

Because substantial evidence supports the ALJ's Decision, the Court should affirm it. For these reasons, the Court finds no basis to grant the relief Plaintiff seeks and recommends the Complaint be dismissed.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff's Request for Relief (ECF No. 9) be **DENIED**;

2. Defendant's Request for Relief (ECF No. 11) be **GRANTED**; and

3. This matter be **DISMISSED WITH PREJUDICE**.


Dated: August 8, 2025                    *s/ Dulce J. Foster*
                                         DULCE J. FOSTER
                                         United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).